**EUN–HEE LEE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 85–2711.

United States District Court, District of Columbia.

Jan. 16, 1987.

Patrick J. Cole, Annandale, Va., for plaintiff.

Asst. U.S. Atty., James N. Owens, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN GARRETT PENN, District Judge.

This case is before the Court on cross-motions for summary judgment. The motions involve the Immigration and Naturalization Service's (INS) decision to deny plaintiff's request for temporary work authorization. Plaintiff seeks to confute the denial of employment authorization on the grounds that it deprives her of due process and equal protection rights. At the outset, however, the Court notes that the narrow focus in this matter is whether the denial, in the context of the relevant facts, was unlawful. Plaintiff is not petitioning the Court to declare that she is entitled to a Third Preference status; that application was deemed not properly filed by the same officer who denied work authorization. After review of the motions, the oppositions thereto, the administrative record and the applicable statutes and regulations, the Court concludes that the denial was proper.

The unique facts of this case support an initial determination that the change-of-status application was not "properly filed" and consequently the officer was prohibited from granting work authorization. Therefore, the issues raised concerning an officer's discretionary power under the regulations and a non-immigrant's right to employment during the processing of an application need not be addressed at this time.[1]

## I

On or about July 26, 1984, the restaurant firm of Truth and Etern, Co. filed an application for Alien Employment Certification with the Department of Labor (DOL), 8 U.S.C. § 1182(a)(14). The application requested certification of a manager-trainee position to effectively run the food establishment. In particular, the application sought someone with a liberal arts degree and with the ability to read and speak Korean. Administration record, Defendant's Exhibit A. DOL approved the certification on May 7, 1985. On or about April 17, 1984, Eun-Hee Lee entered the United States pursuant to a visitor's visa. She is a graduate of EWHA Women's University Seoul, Korea, with a master of arts degree in social work. On July 1, 1985, Truth and Etern filed an I-140 with the INS, on Ms. Lee's behalf, petitioning to classify Preference Status of an Alien on the Basis of Profession or Occupation (3rd Preference).[2]

---

1. The Court notes that other courts have ruled on similar claims. *See Jarecha v. INS,* 417 F.2d 220 (5th Cir.1969) (held that the lack of regulations guiding administrative officers' discretion, delegated to administer Section 1255, in no way impaired their ability to exercise such discretion nor did it constitute a denial of due process); *Marin v. Smith,* 376 F.Supp. 608 (D.Conn.1974) (held INS failure to take timely action on a request for "Employment Authorization" during pending change-of-status petition did not constitute immediate irreparable injury warranting injunctive relief).

2. 8 U.S.C. 1153(a)(3) reads, "(v)isas shall next be made available ... to qualified immigrants who are members of the professions, or who because of their exceptional ability in the science or the arts will substantially benefit prospectively the national economy, cultural interests or welfare

Record, Defendant's Exhibit B. 8 U.S.C. § 1153(a)(3).

On July 30, 1985, Eun-Hee Lee applied for an adjustment of status to that of permanent resident pursuant to 8 U.S.C. § 1255(a). At that time, the visa petition filed on her behalf had not yet been approved. Plaintiff's Exhibit p. 15. The statute reads:

> The status of an alien ... who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is approved.

On that same day, the plaintiff and her attorney were referred to the Immigration Officer for a change-of-status interview. At the processing interview, plaintiff's oral request for work authorization, pursuant to 8 C.F.R. 109.1(b)(3), was denied. The Immigration Officer attempted to reject the adjustment-of-status application because the job relevant to the visa petition was not a professional position within the meaning of the INS guidelines. Consequently, an immigrant visa was not immediately available and the application was considered not properly filed. Plaintiff, through her attorney, asserted that the filing was valid, the application approvable and insisted that the officer accept the change of status application. Plaintiff's Motion for Summary Judgment (PSJ) at 5.

On August 2, 1985, after counsel sent a letter to appeal the INS officer's actions, Robert Neptune, District Director of the Washington District Office, INS, upheld the interviewer's decision; he denied the visa petition, deemed the adjustment of sta-

tus application not properly filed, and denied the work authorization request. Record, (PSJ) at 2, 4. Truth and Etern appealed the denial of the visa petition and that appeal is still pending.

## II

Although not statutorily mandated under the Code section for Adjustment of Status, 8 U.S.C. § 1255, the regulations subsequently promulgated state:

> Any alien who has *properly filed* an application for adjustment of status to permanent resident alien *may* be granted permission to be employed for the period of time necessary to decide the case.

8 C.F.R. 109.1(b)(3) (emphasis added).

In addition, the officers are instructed:

> During the time any application for status as a permanent resident is pending, the applicant's Form I-94, upon request may be noted "EMPLOYMENT AUTHORIZATION ADJUSTMENT APPLICANT". However, if the application must be returned to the applicant for any reason, such as when a required visa petition has not been submitted or *cannot be approved upon initial review, the Form I-94 shall not be so noted.*

INS OI 245.9 Employment (emphasis added).

Historically, such authorization was handled as an administrative discretion. In 1981, temporary work authorization was extended to numerous alien classes automatically or when the alien upon petition substantiated a need. 8 C.F.R. Part 109, added by 46 Fed.Reg. 25079 (1981). *See* 2 Gordon and H. Rosenfield, Immigration Law and Procedure, § 6.19 (1986). A brief review of the Adjustment of Status procedure will provide perspective to the issues raised.

Under an earlier version of the Immigration and Naturalization Act, nonimmigrant aliens who sought to adjust their status to that of immigrants were required to leave

---

of the United States." Typically, Third Preference visas are extended to scientists, doctors,

etc.

the country and seek re-entry through American consulates. To ameliorate this hardship, the INS devised an administrative procedure known as pre-examination under which nonimmigrants were examined by immigration officials in the United States and were issued an immigrant visa by the Canadian consular office, if their admissibility were established. While preexamination was an important benefit it still entailed a pointless trip out of the United States. In 1952, Congress enacted Section 245 of the Act, 8 U.S.C. § 1255, to allow nonimmigrant aliens to adjust their status without leaving the country. *See* Gordon & H. Rosenfield, § 7.7(a). Subsequent amendments simplified the procedures and eliminated certain restrictive conditions. *Id.*

█ The applicant for adjustment of status is assimilated to the status of an entrant alien and consequently the same burdens and benefits apply. The burden is on the adjustment applicant to establish eligibility and worthiness for relief. *Jain v. INS*, 612 F.2d 683, 687 (2d Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980); *Wing Ding Chan v. INS*, 631 F.2d 978, 980 (D.C.Cir.1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1371, 67 L.Ed.2d 349 (1981). It is important to note that even if a nonimmigrant satisfies the express statutory requirements, the Service has discretion under Section 245 to deny the application. Under the statutory scheme, adjustment of status is considered a matter of administrative grace, not mere statutory eligibility. It is a matter of privilege and is not a right. *Elkins v. Moreno*, 435 U.S. 647, 667, 98 S.Ct. 1338, 1350, 55 L.Ed.2d 614 (1978).

### III

█ One major obstacle facing adjustment of status applicants is to demonstrate that an immigrant visa is "immediately available." *Jain*, 612 F.2d at 687. There

is no dispute that the authority to make decisions in such matters rests with the INS. *Mandany v. Smith*, 696 F.2d 1008, 1012 (D.C.Cir.1983); *Wing Ding Chan*, 631 F.2d at 980. An immigrant visa is immediately available under two conditions. The applicant must first show a priority date on the waiting list which is no later than the date shown in the Department of State Visa Bulletin.[3] *Kahlenberg v. INS*, 763 F.2d 1346, 1349 (11th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986). The applicant must be eligible at the time the application is acted on for the preference category relied on when the application was filed. *Pei-Chi Tien v. INS*, 638 F.2d 1324, 1328 (5th Cir. 1981); *Yui Sing Tse v. INS*, 596 F.2d 831, 834 (9th Cir.1979). Additionally, a Preference Status visa petition must be approved or approvable before an application for adjustment of status is considered properly filed. 8 C.F.R. § 245.2(a)(2). An applicant can either submit the Service notice of the visa approval or submit the visa petition simultaneously with the adjustment application. Gordon and Rosenfield elucidate on the process:

> ... In such cases, the adjustment application is retained and processed by the district director only if the visa petition is found to be in order for approval upon initial review by an immigration officer, and if approval of the visa petition would make the immigrant visa immediately available. But the regulations specify that the application for adjustment is not regarded as properly filed, as noted hereafter, until the visa petition has been approved.

Gordon & Rosenfield, *supra* § 7.7e and 7–105. This summary controverts the approach that plaintiff urges the Court to accept.

### IV

█ It is uncontested that Truth and Etern's Third Preference petition, filed on

---

**3.** In the District Director's opinion, since the position was not a professional position, the application for adjustment could only be properly filed if the priority date for Sixth Prefer-ence visa was after August 1, 1984 (the priority date of the applicant). The priority date for Sixth Preference visas was January 1, 1984. Plaintiff's Exhibit D.

behalf of Ms. Lee, was not approved at the time the change-of-status application was submitted. The officer believed that the visa petition would never be approved because a manager trainee was not a professional occupation for a Third Preference visa. An application is not properly filed unless a visa petition is immediately available and therefore the officer attempted to return the application and logically denied work authorization. Plaintiff's counsel alleges that "in his experience every alien applying for adjustment of status, even with a questionable case is allowed work permission in order to survive pending resolution of the case." PMSJ, p. 17. The Court cannot address such conclusory averments when the record is void of any substantiation regarding what these "questionable cases" involve. In Ms. Lee's case, work authorization was inappropriate considering the application's posture. To hold otherwise would in essence compel an INS officer to grant work authorization simply because an application was submitted, no matter how incomplete or frivolous. Because the visa petition, not before this Court for review, was questionable, the denial of work authorization was clearly within the officer's responsibilities.

## V

An alien's right to accept employment in the United States manifestly is a matter of profound concern to the alien, his or her family and the general public. Controlling the numbers of aliens in the United States workforce is likewise as important. Congress has responded to the complex considerations with legislation and procedural mandates. Focusing on the narrow issue of whether plaintiff was improperly denied work authorization, the Court holds that the decision was not arbitrary or capricious. Therefore, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment, upholding the denial of work authorization, is granted.